Nixdorff-Krein Mfg. Co., Appellant, *v.* Grossman.

Argued June 16, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

Before KALLICK, J., without a jury.

*Alan William Margolis,* with him *Paul Kraft,* for appellant.

*A. D. Gordon,* for appellee.

OPINION BY FLOOD, J., September 12, 1961:

The plaintiff manufactures tire chains. The defendant is a warehouseman who also sells chains. Plaintiff warehoused its chains with the defendant under an agreement which, as amended as set forth in a letter from defendant to plaintiff, dated September 23, 1952, provided for a 5% commission on the gross value of goods withdrawn from the warehouse except merchandise transferred to another warehouse under the plaintiff's instructions.

The plaintiff sued the defendant for the price of certain merchandise sold to him. The defendant admitted the plaintiff's claim, but counterclaimed for commissions due on tire chains withdrawn from his warehouse. Some credit for such commissions was apparently given in Exhibit A to the complaint, but the trial judge found an additional amount of commissions due to the defendant. The dispute arises over whether the goods upon which the defendant claims these commissions were transferred to another warehouse, so that plaintiff is not obligated to pay commissions on them.

The goods covered by the counterclaim were delivered between October, 1954 and September, 1955, from defendant's warehouse to Truck Parts and Equipment Co. at plaintiff's order. The trial court found that they were transferred to Truck Parts and Equipment Co. not as a warehouse for storage, but for the purpose of sale and avoidance of payment of the commission due under the contract.

We think the court's conclusion was justified under the testimony for several reasons.

1. Plaintiff's only witness was Mr. Goldstein, the owner of Truck Parts and Equipment Co. He testified that he was in the business of distribution of motor truck parts and that he had never warehoused tire

chains before, although he had warehoused other lines before. He was in the jobbing business. He said that a warehouseman is one who would sell to jobbers who in turn would resell to the trade. He resold the chains to the trade under the orders of the plaintiff.

2. From the itemization in the counterclaim, the goods appear to have been withdrawn in odd lots. More than one hundred withdrawals appear to have been made over a period of eleven months. Only about 10% of these were of a value of $500 or over, and a large number were less than $100.

The defendant testified that it was customary to ship merchandise to a warehouse in trailer-load quantities and that lesser amounts do not pay. Mr. Goldstein, President of Truck Parts and Equipment Co., said that it was the custom of the warehouses to receive "less than trailer-loads in most cases, or half trailer-loads". Most of the shipments in this case were obviously much less than half trailer-loads.

3. Mr. Grossman, the defendant, illustrated shipments upon which he was not entitled to commission, shipments from one warehouse to another, by saying that when Pittsburgh gets a big snow storm and needs chains, he would ship them without charge, and in turn they would not charge him when he was stuck because "we would give them the same deal in return." It's "a deal between warehouse and warehouse" to help one another since "if there is a big snow storm no warehouse can hold enough".

Plaintiff's witness Goldstein testified that it would be a very rare case for the same manufacturer to have two warehousemen in Philadelphia at the same time. Both defendant's warehouse and Truck Parts' place of business were in Philadelphia.

4. Defendant testified that he understood that he would get paid if the agreement was terminated, that

this was a gentleman's understanding and that Mr. Dorman, plaintiff's sales manager, "when the contract came up", said: "Forget about it, it will never be, because there is a lot of labor involved and I do not expect people to do anything for nothing".

Defendant also testified that when the deal was all over they said they would give him $500 for his work. It is to be noted that on Exhibit A to the complaint, defendant is given credit as follows:

"ALL. FOR MOV. CH. TERM. WHSE. AGR. .... $500.00"
"Add. ALL FOR MOV. CHAIN ............. 40.80"

No further explanation of these allowances and no itemization was given by the plaintiff.

5. Defendant testified that he was never notified that plaintiff was not going to continue to use defendant as a warehouse when these withdrawals were being made. There were still some chains in defendant's warehouse at the end of the contract and defendant took them and charged them to himself.

No officer or agent of the plaintiff company took the stand and there was no denial by the plaintiff of any of the above testimony. While there was some testimony by Mr. Goldstein indicating that his company received the goods as a warehouseman, the trial judge's conclusion that the goods were withdrawn for sale to avoid payment of a commission under the contract, and not for transfer to another warehouse for storage, was supported by ample testimony, and his finding for the defendant on the counterclaim is fully justified.

Judgment affirmed.